UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

CHARLES M. SATTERFIELD, III,

                    Plaintiff,

     -against-

                                        04-CV-3782(KMW)(GWG)

PFIZER, INC. and WAGNER, HARDING,
FISCHBEIN, BADILLO,

                    Defendants.                OPINION & ORDER
------------------------------------X

CHARLES M. SATTERFIELD, III,

                    Plaintiff,           98-CV-8040(KMW)(GWG)

     -against-

MONSANTO CO. and SOLUTIA, INC.,

                    Defendants.
------------------------------------X

WOOD, U.S.D.J.:

     Pro se Plaintiff, Satterfield, moves to vacate the judgment

issued in Satterfield v. Monsanto Co., 88 F. Supp. 2d 288

(S.D.N.Y. 2000)(hereinafter "Satterfield I"), pursuant to Fed. R.

Civ. P. 60(b)(hereinafter "Rule 60(b)").  Defendants move to

dismiss Satterfield's claims and move for an order imposing Rule

11 sanctions (monetary and injunctive) on Satterfield.  In a well-

reasoned Report and Recommendation dated March 17, 2005 (the

"Report"), attached hereto as Exhibit A, familiarity with which is

1

assumed, Magistrate Judge Gabriel W. Gorenstein recommended that the Court grant Defendants' motions to dismiss, and deny Satterfield's motion to vacate the prior judgment. The Report also recommended that the Court grant Defendants' motions for an injunction barring Satterfield from re-litigating the issues in this case and deny Defendants' motions for monetary sanctions. Satterfield objected to the Report; Defendants responded to Satterfield's objections. For the reasons explained below, the Court adopts the Report in its entirety.

The Court adopts the statement of facts set out in the Report. (<u>See</u> Report 2-7.)

The Court makes a <u>de novo</u> determination with respect to any portion of the Report to which a specific objection has been made. <u>See</u> Fed. R. Civ. P. 72(b). Satterfield's only specific objection is that the Report erred in its analysis of, and failure to grant, Satterfield's Rule 60(b)(6) motion; that is, Satterfield alleges that Defendants committed a fraud upon the Court in <u>Satterfield I</u>, through false representations of the applicable law and the factual record.[1] (Pl.'s Obj'n to Report 6-8.) Satterfield contends that these allegedly false representations meet the exacting requirements of Rule 60(b)(6) – i.e. that the fraud be of a kind that "seriously affect[ed] the integrity of the normal

---

[1] Satterfield mistakenly asserts that the Report acknowledged that Defendants had committed fraud. (Pl.'s Obj'n to Report 6, 8.) In fact, the Report concluded the opposite – that no fraud had been committed. (<u>see</u> Report at 12-14.)

process of adjudication." <u>Gleason v. Jandrucko</u>, 860 F.2d 556, 559
(2d Cir. 1988).  Satterfield has not met these requirements.  The
Court agrees with the Report's conclusion that Satterfield's
allegation of fraud is nothing more than "an accusation that an
adversary made unsupportable legal arguments," and that "[n]othing
prevented Satterfield from countering these legal arguments in
<u>Satterfield I</u>."  (Report at 13); <u>see also</u> <u>Gleason</u>, 860 F.2d at 559
(holding that the Rule 60(b)(6) "savings clause" must be read very
narrowly and cannot be used to collaterally attack statements that
a party could have challenged previously).  Having reviewed
Satterfield's allegations, and the Report's analysis and
conclusions, <u>de novo</u>, the Court finds that Satterfield failed to
meet the exacting standards set forth in Rule 60(b)(6).  <u>See</u>
<u>Gleason</u> 860 F.2d at 559 (to meet Rule 60(b)(6)'s exacting
standards, a party must successfully argue an alleged fraud that
subverts the integrity of the court system itself).

   The Court has reviewed the remainder of the Report, and finds
it to be well-reasoned and free of any "clear error on the face of
the record."  Fed. R. Civ. P. 72(b) advisory committee's note; <u>see</u>
<u>also</u> <u>Nelson v. Smith</u>, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985).
The Court accepts the Report's recommendations; the Court grants
Defendants' motions to dismiss, denies Defendants' motion for

monetary sanctions[2], and denies Satterfield's motion to vacate the judgment in <u>Satterfield I</u>.

The Court hereby enjoins Satterfield from instituting any new action, in state or federal court, based on the acts complained of in this litigation. The Court issues this injunction for the following reasons. Satterfield has litigated the instant claims in the Southern District of New York (in two separate actions), in Delaware federal court, and in Delaware state court.[3] In May 2005, Satterfield filed disciplinary charges against Defendant Pfizer's counsel for representations made on behalf of Pfizer in the instant action. (<u>See</u> June 7, 2005 Letter from Satterfield to Schindler, at 1.) Satterfield's repeated instigation of litigation on these claims indicates that he is likely to continue litigating these claims unless he is enjoined from doing so. <u>See</u> <u>Lacy v. Principi</u>, 317 F. Supp. 2d 444, 449-50 (S.D.N.Y. 2004)(enjoining a plaintiff from re-litigating claims because plaintiff's submissions indicated that he would not stop litigating his claims until he found a judge who agreed with him); <u>see also</u> <u>In re Martin-Trigona</u>, 737 F.2d 1254, 1262-63 (2d Cir.

---

[2] The Court agrees with the Report that, because of Satterfield's <u>pro se</u> status and Rule 11's requirement that any sanctions "be limited to what is sufficient to deter repetition of such conduct," monetary sanctions should not be imposed. (Report at 22); Fed R. Civ. P. 11(c)(2).

[3] Satterfield named a new Defendant in the instant action, the law firm Fischbein, Badillo, Wagner & Harding ("FBWH"). Satterfield sues FBWH for its involvement in Defendant Pfizer's alleged commission of a fraud upon the Court. FBWH's involvement in this series of lawsuits is limited to successfully representing Defendant Pfizer in a

1984)(holding that a district court's obligation to protect and preserve the sound and orderly administration of justice requires the court to shield federal litigants and their counsel from vexatious litigation in all courts, state and federal); <u>Raffe v. Doe</u>, 619 F. Supp. 891, 897-98 (S.D.N.Y. 1985)(noting that a court should issue an injunction against a vexatious litigant upon a showing of a history of vexatious litigation).

Any violation of this injunction will be treated as a contempt of Court.  In addition, because courts have recognized that "[v]exatious litigants may be sanctioned in a way which limits the litigant's ability to initiate new actions unless the litigant first complies with certain conditions," <u>DePonceau v. Bush et al.,</u> 2004 WL 1574621, *3 (W.D.N.Y. June 4, 2004), the Court imposes the following requirement with respect to any future litigation filed by Satterfield: Satterfield is ordered to annex to his complaint or other initial pleading in any future litigation, on any subject, a copy of this Order.  In addition, he is hereby ordered to include with his complaint or other initial pleading in any future litigation on any subject, an attestation under penalty of perjury that the cause of action stated in his complaint does not violate this injunction.  Any initial filing

---

motion to quash a subpoena filed in the Southern District of New York as part of Satterfield's Delaware state court action.

that does not include such an attestation should be summarily dismissed pursuant to the terms of this injunction, and may, of course, subject Satterfield to sanctions and/or contempt of Court.

This injunction does not deny Satterfield the right to seek direct review of this Opinion and Order in the United States Court of Appeals for the Second Circuit and the United States Supreme Court. The Clerk of the Court is directed to close this case. Any pending motions are moot.

SO ORDERED.

Dated:     New York, New York
           July 13, 2005

                                   _____
                                        Kimba M. Wood
                                   United States District Judge

Copies of this Order have been mailed to pro se Plaintiff and counsel for the Defendants.

# EXHIBIT  A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CHARLES M. SATTERFIELD, III,                    :
                                                                         REPORT AND
                                                :        RECOMMENDATION

                        Petitioner,             :

            -v.-                                :        04 Civ. 3782 (KMW) (GWG)

PFIZER, INC., et al.,                           :

                                                :
                        Defendants.
-------------------------------------------------------------X
CHARLES M. SATTERFIELD, III,                    :
                                                                         REPORT AND
                                                :        RECOMMENDATION

                        Petitioner,             :        98 Civ. 8040 (KMW) (GWG)

            -v.-                                :

MONSANTO COMPANY and SOLUTIA, INC.,             :

                                                :
                        Defendants.
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

        Charles M. Satterfield, III ("Satterfield") brings this action pro se asserting various claims

against Pfizer, Inc. ("Pfizer") and the law firm of Fischbein Badillo Wagner Harding ("FBWH")

and has moved to vacate a judgment issued in a case he brought in 1998. The defendants have

moved to dismiss Satterfield's claims. They have also moved for sanctions and to enjoin

Satterfield from future related litigation. For the reasons stated below, the plaintiff's motion

should be denied and the defendants' motions should be granted.

## I. INTRODUCTION

The instant action is Satterfield's fourth lawsuit seeking to obtain stock at present value based on stock certificates issued to Satterfield's great-grandfather, Daniel Oldroyd, in 1924. The allegations in the complaint are assumed to be true for the purposes of this motion.

### A. The Complaint

In December 1994, Satterfield acquired a stock certificate originally issued to Oldroyd by the E.L. Smith Oil Company ("Smith Oil"). Verified Complaint, filed May 19, 2004 (Docket #1) ("Compl."), ¶¶ 3, 8. Oldroyd purchased the stock certificate in 1924 which represented 50 shares of $1.00 par value stock. Id. ¶ 8.

In 1938, Smith Oil merged with Lion Oil Refining Company ("Lion Oil"). Id. ¶¶ 11, 23. As a result of this merger, Oldroyd's heir received a Lion Oil scrip certificate equal to a half share of Lion Oil stock. Id. ¶ 23. As a holder of the scrip certificate, Oldroyd's heir was entitled to aggregate the scrip certificate and exchange it for a full share of Lion Oil stock. See Satterfield v. Monsanto Co., 88 F. Supp. 2d 288, 298-90 (S.D.N.Y. 2000) (Stanton, J.) ("Satterfield I"). Satterfield does not allege that any of his predecessors in interest attempted to do so.

In both 1947 and 1949, Lion Oil stock underwent two-for-one stock splits. Compl. ¶ 24. In 1955, Lion Oil merged with Monsanto Company ("Monsanto"). Id. ¶ 27. Because he believed that the two stock splits increased his interest in Lion Oil from one-half share to one or more shares, id. ¶ 26, Satterfield in September 1995 requested permission to exchange his scrip certificate for shares of Monsanto stock. Id. ¶ 14. This request was refused. Id. Monsanto changed its name to Pharmacia, Inc. in 2002 and merged with Pfizer in 2003. Id. ¶ 28.

The complaint also contains allegations relating to the merger of Monsanto/Pharmacia with Pfizer, Inc. in 2003, which are discussed in the next section.

B.  Litigation History

Satterfield filed suit in 1998 against Monsanto and Solutia Inc., a spinoff of Monsanto, making the same claim and alleging, inter alia, conversion, breach of fiduciary duty, and fraud. See Satterfield I.  Following discovery, Monsanto moved for summary judgment, which was granted by the district court.  Id.  In its decision, the court first noted that the merger between Smith Oil and Lion Oil entitled Oldroyd to receive only Lion Oil scrip, not shares.  Id. at 292. The court found the use of scrip certificates in a merger was authorized under Delaware law and the law also "ma[de] clear that the scrip holder has no ownership interest in the corporation's assets cognizable upon liquidation."  Id.  Thus, Oldroyd's heirs could have become Lion Oil shareholders only by aggregating their scrip with additional scrip to form a whole share.  Id. Because under Delaware law, a stock split "divides the outstanding shares of a corporation without altering any shareholder's interest" the court concluded that "the scrip . . . was not affected by the 1947 or 1949 splits of Lion Oil stock."  Id.  The court ruled in the alternative that, even if Satterfield's predecessors had acquired Monsanto scrip, their right to sell the scrip to Monsanto or obtain Monsanto shares would have expired in 1961 pursuant to the merger agreement entered into between Lion Oil and Monsanto.  Id. at 293.  Accordingly, the District Court held that Satterfield had no property interest in Monsanto shares and granted the defendants' motion for summary judgment.  Id. at 294.

Satterfield appealed to the Second Circuit, which affirmed the district court.  Satterfield v. Monsanto Co., 238 F.3d 217 (2d Cir. 2001) (per curiam).  The Second Circuit noted that shares

in a corporation "entitle the holder to voting rights, to dividends and to a share in the corporation's assets upon liquidation." Id. at 219. In contrast, the holder of scrip has only "an expectancy interest, not a vested ownership interest" in a corporation unless otherwise stated in the scrip certificate. Id. The court found that both the merger agreement and Lion Oil scrip certificates "explicitly stated that Lion Oil scrip holders were not shareholders of a Lion Oil stock and were not entitled to the benefits enjoyed by Lion Oil shareholders." Id. The Second Circuit concluded that the Lion Oil scrip was not stock, did not confer the benefits of stock ownership, and contained no independent protection for loss in value. Id. Accordingly, the court determined that the Lion Oil scrip held by Satterfield's predecessors was not affected by the stock splits. Id. As a result, Satterfield could claim no interest in Monsanto or Solutia stock because Satterfield's predecessors did not aggregate the scrip necessary to acquire any shares of Lion Oil stock. Id. Satterfield subsequently sought a writ of certiorari from the U.S. Supreme Court, which was denied. Satterfield v. Monsanto Co., 533 U.S. 956 (2001).

Satterfield, proceeding as administrator of the estates of his grandparents, filed his second lawsuit to redeem his scrip in the chancery court of Delaware. See Satterfield v. Pharmacia Corp., 2002 WL 1358751 (Del. Ch. June 17, 2002) ("Satterfield II"). The court dismissed his claims with prejudice on the ground that Satterfield had already brought the same claims against the same defendants in New York and thus the action was barred by the doctrine of res judicata. Id. at *1-*2. The court rejected Satterfield's argument that he should have been permitted to relitigate his claim merely because of his contention that the courts in Satterfield I had "erroneously interpreted Delaware law and failed somehow to recognize the delicate interplay between state corporate law and the federal securities laws." Id. at *1. The court held that

the mere fact that clearly competent tribunals may have made a mistake of law
does not aid Satterfield. He chose to litigate his case first in the courts in New
York, rather than in Delaware. He has received two formal opinions from two
respected federal courts. He has had the opportunity to seek review from the
highest court in our nation. He has had all the days in court that he is entitled to
have to win his dispute with Pharmacia and Solutia.

Id. at *2. Satterfield appealed to the Delaware Supreme Court, which affirmed the lower court.

Satterfield v. Pharmacia Corp., 2002 WL 31107548 (Del. Sept. 19, 2002). The Delaware

Supreme Court held that Satterfield had "fully litigated his claims against the appellees in

[Satterfield I]" and that "the Court of Chancery properly applied well-settled Delaware law

regarding res judicata" by dismissing the complaint with prejudice. Id. at *1 (footnote omitted).

Satterfield subsequently filed a third lawsuit in the federal district court of Delaware –

this time against the Attorney General and Deputy Attorney General of Delaware, as well as the

State Escheator – under 42 U.S.C. § 1983. Satterfield v. Brady, 2003 WL 22953179, at *1 (D.

Del. Dec. 9, 2003) ("Satterfield III"). This suit alleged violations of due process and equal

protection based upon the failure of the State of Delaware to sue Monsanto for violating

Delaware's escheat laws. Id. at *2. FBWH became involved in Satterfield III because it

represented Pfizer in the Southern District of New York on a motion to quash a subpoena that

Satterfield had served on Pfizer, a non-party to the Delaware suit. Compl. ¶ 45; Memorandum of

Law in Support of the Motion of Defendant Fischbein Badillo Wagner Harding to Dismiss the

Complaint Pursuant to FRCP 12(b)(6), filed Aug. 16, 2004 (Docket #10) ("FBWH Rule 12(b)(6)

Br."), at 5-6. The motion to quash was granted. FBWH Rule 12(b)(6) Br. at 6. The Delaware

court thereafter dismissed the suit due to Satterfield's failure to establish a due process violation

because the court in Satterfield I had determined that Satterfield had no property interest in

Monsanto.  <u>Satterfield III</u>, 2003 WL 22953179, at *2-*3.  It dismissed the equal protection claim

because Satterfield could not show that he had been treated differently from other individuals

who were similarly situated.  <u>Id.</u> at *3.

Satterfield has now returned to this Court alleging the same chain of events as in

<u>Satterfield I</u> but adding FBWH as a defendant and including several new causes of action

("<u>Satterfield IV</u>").  In addition to making allegations regarding the genesis of his entitlement to

shares of Pfizer, <u>see</u> Section I.A. above, the current complaint makes some additional allegations.

The import of these new allegations is not entirely clear but they appear to have been occasioned

by Pfizer's merger with Pharmacia.  Satterfield alleges that in 2002, he contacted Pfizer and

"notified them of accounting irregularities regarding the liability surrounding the Smith Oil

interests that had mysteriously (as in violation of [Generally Accepted Accounting Principles

("GAAP")]) disappeared from the now-Pharmacia financial statements."  Compl. ¶ 29.  He

alleges that Pfizer was obligated to investigate the matters in his letter, that it failed to do so, and

that had it done so, it would have learned that Pharmacia was "perpetuating [a] scheme to

defraud" by virtue of the position it had taken in <u>Satterfield I</u>.  <u>Id.</u> ¶¶ 29-30.  He alleges

that Pfizer should have publicly disclosed the existence of the fraud, which Satterfield

characterizes repeatedly as deriving from "arcane minutia of GAAP."  <u>Id.</u> ¶¶ 34, 48, 49, 50.

Pfizer's failure to make this disclosure allegedly resulted in its "deceiv[ing] federal securities

regulators, investors, and those rightfully entitled to the shares at issue."  <u>Id.</u> ¶ 36.  Satterfield

alleges that Pfizer falsely "offer[ed] financial statements as evidence and represent[ed] [that] they

were compiled in a manner consistent with GAAP."  <u>Id.</u> ¶ 37.  Satterfield offers as an exhibit to

his complaint a letter from the Financial Accounting Standards Board regarding the proper

treatment of stock splits.  <u>See</u> Letter from Lawrence W. Smith to Charles M. Satterfield, dated Nov. 12, 2003 (annexed as Ex. 1 to Compl. and Ex. 2 to Memorandum of Law in Support of Plaintiff's Motion for Relief Pursuant to Fed. R. Civ. Pro. Rule 60(b)(4) and Rule 60(b)(6), filed Sept. 15, 2004 (Docket #28) ("Rule 60(b) Br.")) ("FASB Letter").  Satterfield asserts that by "remain[ing] silent and fail[ing] to insist the property at issue be escheated" – apparently during the course of Pfizer's merger with Pharmacia in 2003 – Pfizer committed fraud.  Compl. ¶ 41.

With respect to FBWH, Satterfield asserts that its liability derives from the fact that it has "chosen to act as the mouthpiece for Pfizer in any venue necessary."  <u>Id.</u> ¶ 44.  Specifically, Satterfield notes FBWH's role in moving to quash the subpoena served on Pfizer in <u>Satterfield III</u>.  <u>Id.</u> ¶ 45.

Satterfield alleges that Pfizer and FBWH's actions with respect to his claim for stock constitutes common law fraud, mail fraud, and wire fraud, and conspiracy to commit these frauds.  <u>Id.</u> ¶¶ 54-76.  Satterfield also asserts claims of conversion, breach of fiduciary duty, and breach of the covenant of good faith and fair dealing solely against Pfizer.  <u>Id.</u> ¶¶ 77-88.

 Defendants have moved to dismiss all claims against them.  [Pfizer's] Motion to Dismiss, filed Aug. 16, 2004 (Docket #7); [FBWH's] Motion to Dismiss, filed Aug. 16, 2004 (Docket #9).  They also seek sanctions pursuant to Rule 11 and have moved to enjoin Satterfield from filing any related litigation in the future.  [FBWH's] Motion for Sanctions, filed Sept. 9, 2004 (Docket #17); [Pfizer's] Motion for Sanctions, filed Sept. 7, 2004 (Docket #15).  Satterfield has moved to vacate the judgment in <u>Satterfield I</u>.  Plaintiff's Motion for Relief Pursuant to Fed. R. Civ. Pro. Rule 60(b)(4) and Rule 60(b)(6), filed Sept. 7, 2004 (Docket #23) ("60(b) Motion").

II.  APPLICABLE LEGAL PRINCIPLES

A.  Motion to Dismiss

In resolving a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  See, e.g., Swierkewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).  A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted).  In reviewing a Rule 12(b)(6) motion, "'[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'"  Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998) (quoting Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996)) (alteration in original).

In making this evaluation, complaints drafted by pro se plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam), and they should be interpreted "to raise the strongest arguments that they suggest," Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (citation and quotation omitted).  However, the Court is not required to accept a pro se plaintiff's "conclusions of law or unwarranted deductions of fact."  First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994) (quotation and citation omitted), cert. denied, 513 U.S. 1079 (1995).  "This principle applies with even greater force in a fraud case governed by the more stringent pleading requirements of Fed. R. Civ. P. 9(b)."  Id.

B.  Res Judicata and Collateral Estoppel

The doctrine of res judicata, or claim preclusion, "provides that '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"  Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997) (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)).  Essentially, "once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the [first] action arose."  Id. (internal citation and quotation omitted) (alteration in original).

The doctrine of collateral estoppel, or issue preclusion, is related to the doctrine of res judicata and bars "a party from relitigating 'an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point.'"  Khandhar v. Elfenbein, 943 F.2d 244, 247 (2d Cir. 1991) (quoting Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 445 (1985)).

III.  DISCUSSION

A.  Satterfield's Motion to Set Aside Judgment Under Fed. R. Civ. P. 60(b)

As Satterfield characterizes his claim, the central issue in the instant action and all of his prior actions is whether "a stock split divides only the outstanding shares of a corporation" – a quotation from the district court's ruling in Satterfield I, 88 F. Supp. 2d at 292 – or whether, as Satterfield contends, a stock split also affects scrip.  See Rule 60(b) Br. at 2.  As this precise question was definitively answered in prior litigation, Satterfield has sought to avoid the preclusive effect of Satterfield I by filing a motion under Fed. R. Civ. P. 60(b) to set aside the

judgment.  See Rule 60(b) Motion.[1]  Satterfield claims that the judgment should be set aside

under Rule 60(b)(4) as "void" or in the alternative under Rule 60(b)(6) because the defendants

committed fraud on the court.  See Rule 60(b) Br. at 3.  These arguments seem to be premised on

the theory that the defendants had a "scheme to intentionally mislead the court" because Pfizer's

financial reports misstated the effect of the stock split by not taking into account its actual

liabilities with regard to unclaimed scrip interests in the manner that Satterfield has been arguing

since Satterfield I.  See id. at 5-6.

In his motion papers, Satterfield repeatedly argues that Pfizer's claim that "a stock split

divides only the outstanding shares of a corporation" incorrectly states proper accounting

practices and that Satterfield I's decision based on this representation of standard accounting

practices is fraudulent and renders the decision void.  Id. at 4-10, 15-16; Plaintiff's Final Brief in

Support of Plaintiff's Motion for Relief Pursuant to Fed. R. Civ. Pro. Rule 60(b)(4) and Rule

60(b)(6), filed Sept. 22, 2004 (Docket #29) (Rule 60(b) Br. II), at 2-5.  Satterfield has marshaled

various documents to bolster his contention that the quoted principle is incorrect and that Pfizer

committed fraud by asserting it in Satterfield I.  These documents include, inter alia: (1) the letter

from the FASB of November 12, 2003, see FASB Letter, and an undated "Interpretation 44"

(annexed as Ex. 3 to Rule 60(b) Br.), which he asserts shows that the accounting for his scrip was

improper, see Rule 60(b) Br. at 6; (2) a 2000 10-K filing from Pfizer,[2] see 10-K filing, undated

---

[1]Satterfield should have filed his Rule 60(b) motion papers in the docket of Satterfield I,
as it is that judgment he wishes to have vacated.  The Court will excuse the error, however, and
deem his motion papers to have been filed in that case.  Accordingly, as reflected in the captions,
this Report and Recommendation is being docketed both in his 2004 case and in the 1998 case.

[2]Although Satterfield states at one point that the 10-K filing was made on March 27,
2002, Rule 60(b) Br. at 9, he elsewhere fixes the date as March 27, 2000, id. at 8, 9, 17, and this

(reproduced as Ex. 4 to Rule 60(b) Br.), that he asserts shows inconsistent treatment given to executive stock options, Rule 60(b) Br. at 8-9, 17-18; (3) a portion of a 1968 New York Stock Exchange manual regarding the treatment of scrip (annexed as Ex. 11 to Rule 60(b) Br. II); and (4) an August 24, 2004 memorandum from the Chicago Board of Options Exchange regarding a stock split at Chevron Texaco Corporation (annexed as Ex. 6 to Rule 60(b) Br. II). These are just a sampling of the documents submitted by Satterfield. These and the other documents annexed to Satterfield's papers have been provided to the Court apparently on the theory that they are consistent with Satterfield's own position on the treatment of scrip and thus show that Pfizer must have known all along that the position it took before the court in Satterfield I was legally incorrect. Accordingly, Satterfield asserts that the judgment was "void since the moment it was issued." Rule 60(b) Br. II. at 5.

      1.  Rule 60(b)(4)

Rule 60(b)(4) permits a federal court to set aside a judgment if the judgment is "void." Judgments are typically declared void under this rule because the court lacked subject matter jurisdiction or personal jurisdiction, although "a judgment is equally void if a court with jurisdiction has 'acted in a manner inconsistent with due process of law.'" Beller & Keller v. Tyler, 120 F.3d 21, 23 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 39 (2d Cir. 1989)); accord O'Brien v. Nat'l Prop. Analysts Partners, 739 F. Supp. 896, 900 (S.D.N.Y. 1990). Rule 60(b)(4) provides no relief, however, to plaintiffs who merely assert that the judgment they seek to overturn was incorrect as a matter of law. See Federated Dep't Stores,

---

is obviously the date he means because he states it was the same date as the issuance of the decision in Satterfield I. See Rule 60(b) Br. at 9, 17.

452 U.S. at 398 ("A judgment merely voidable because [it was] based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same cause [of action].") (quoting <u>Baltimore S.S. Co. v. Phillips</u>, 274 U.S. 316, 325 (1927)); <u>First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda – Permanent Mission</u>, 877 F.2d 189, 194 (2d Cir. 1989) ("An error of substantive law, unlike an erroneous determination that jurisdiction exists, is not a ground for vacating a default judgment as void.").

Satterfield has neither challenged the jurisdiction of the original court nor provided allegations that suggest that the court in <u>Satterfield I</u> acted in a manner inconsistent with due process.  Rather, Satterfield's complaint is that the court "arbitrarily decreed 'a stock split divides only the outstanding shares of a corporation'" and that the court "had no standing or authority to nullify the existing regulatory structure of the nation's securities markets that have been established by Congress."  Rule 60(b) Br. at 16.  For example, he argues that "[t]he problem in the original ruling was created when the court wrongly interpreted <u>Lynam v. Gallagher</u>, [526 A.2d 878 (Del. 1987)]."  Rule 60(b) Br. at 8 n.3; <u>see</u> <u>also</u> Rule 60(b) Br. II at 4-5 (arguing that the "fraudulently begotten judgment is based on a wrongful extension of state divorce law that negates a rule and regulation of the nation's securities exchanges").  These arguments, however, are merely challenges to the district court's interpretation of the law.  Thus, there is no basis for finding the judgment void under Rule 60(b)(4).

2.  <u>Rule 60(b)(6)</u>

Satterfield also seeks relief pursuant to Rule 60(b)(6).  This provision permits courts to set aside a judgment for "any other reason justifying relief from the operation of the judgment."

Fed. R. Civ. P. 60(b)(6).  Satterfield's 60(b)(6) claim rests on the theory that defendants committed "fraud on the court," Rule (60)(b) Br. at 3, through fraudulent accounting and financial practices that failed to properly account for outstanding scrip.  Id. at 4-15.

Satterfield's argument, however, fails because it does not come within the narrow confines of Rule 60(b)(6).  Rule 60(b) contains a separate provision for relief from judgments based on fraud or misrepresentation by an adverse party: namely, Rule 60(b)(3).  Satterfield cannot move under Rule 60(b)(3) because such a motion must be filed within "one year after the judgment."  Fed. R. Civ. P. 60(b).  Because of the availability of the Rule 60(b)(3) remedy, relief for fraud under Rule 60(b)(6) is "limited to fraud which seriously affects the integrity of the normal process of adjudication."  Gleason v. Jandrucko, 860 F.2d 556, 559 (2d Cir. 1988); accord Davenport Recycling Assoc. v. C.I.R., 220 F.3d 1255, 1262 (11th Cir. 2000) ("Fraud on the court must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision, preventing the opposing party from fully and fairly presenting his case.") (internal citations omitted).

Nothing Satterfield has alleged satisfies this exacting standard.  In essence, Satterfield's argument is that defendants' insistence that "a stock split divides only the outstanding shares of a corporation" was incorrect as a matter of law, that defendants knew that it was incorrect, and that the defendants committed fraud on the court by arguing that principle before the court.  See Rule 60(b) Br. at 5-7, 9-15.  This contention, however, does not constitute "fraud" but consists merely of an accusation that an adversary made unsupportable legal arguments.  Nothing prevented Satterfield from countering these legal arguments in Satterfield I.  To the extent he may be asserting that there were factual inaccuracies in filings made by Pfizer in Satterfield I, Gleason

holds that "neither perjury nor nondisclosure, by itself, amounts to anything more than fraud involving injury to a single litigant" and thus cannot constitute "fraud on the court." Gleason, 860 F.2d at 560. Nor has Satterfield shown that the exercise of diligent discovery or additional arguments on his part would not have been sufficient to bring any such inaccuracies to the court's attention. See id. at 559 (no relief under Rule 60(b)(6) where "plaintiff had the opportunity in the prior proceeding to challenge" defendant's contentions). In addition, any position later taken by Pfizer that is allegedly inconsistent with its argument in Satterfield I – for example, with respect to its treatment of executive stock options – would not amount to a fraud "on the court" at the time of the judgment in Satterfield I.

### 3. Timeliness of the Rule 60(b) Motion

In any event, Satterfield has failed to make his Rule 60(b) motion within a reasonable time. See Fed. R. Civ. Pro. 60(b) (requiring a Rule 60(b)(4) and Rule 60(b)(6) motion to be made "within a reasonable time" after entry of the judgment). While "[c]ourts have been exceedingly lenient in defining the term 'reasonable time,' with regard to voidness challenges," Beller & Keller, 120 F.3d at 24 (citations omitted), a delay of more than four years as occurred here cannot be considered reasonable unless mitigating circumstances exist that justify such a delay. See, e.g., State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 179 (2d Cir. 2004) (Rule 60(b)(4) motion filed 26 months after entry of the final judgment untimely absent mitigating circumstances), cert. denied, 2005 WL 407117 (U.S. Feb. 22, 2005); Beller & Keller, 120 F.3d at 24 (suggesting that motion to vacate under Rule 60(b)(4) made over a year after a default judgment not timely where a motion to vacate was previously filed but no voidness challenge was made); Graham v. Sullivan, 2002 WL 31175181, at *1 (S.D.N.Y. Sept.

23, 2002) (nineteen month delay in filing Rule 60(b)(4)(5) or (6) motion following summary judgment unreasonable).  The same is true of Satterfield's motion under Rule 60(b)(6).  See, e.g., Rodriguez v. Mitchell, 252 F.3d 191, 201 (2d Cir. 2001) (Rule 60(b)(6) motion filed three and a half years after entry of judgment untimely); Truskoski v. ESPN, Inc., 60 F.3d 74, 77 (2d Cir. 1995) (per curiam) (Rule 60(b)(6) motion made eighteen months after judgment not made within a reasonable time).

Satterfield points to no event that prevented him from making this motion earlier.  Although he notes the existence of a Pfizer 10-K filing on March 27, 2000 relating to its treatment of executive stock options, see Rule 60(b) Br. at 8-9, 17-18, it has no direct bearing on the factual or legal determinations made in Satterfield I.  Moreover, the instant motion was not filed until September 2004 and thus comes too late to be considered reasonable within the meaning of Fed. R. Civ. P. 60(b).

B.  Motion to Dismiss

Both defendants assert that Satterfield's claims are barred by res judicata and collateral estoppel and must be dismissed.  Rule 12(b)(6) empowers a court to dismiss a claim if it is barred by these doctrines.  See, e.g., Thompson v. County of Franklin, 15 F.3d 245, 253 (2d Cir. 1994) ("Res judicata challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)."); Sassower v. Abrams, 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993) ("[I]t is well settled that a court may dismiss a claim on res judicata or collateral estoppel grounds on a Rule 12(b)(6) motion.").

This Court must look to New York law to determine the preclusive effect of the federal court's judgment in Satterfield I.  See Semtek Int'l, Inc. v. Lockheed Martin Corp., 531 U.S. 497,

508-09 (2001) (preclusive effect of a decision by a federal court sitting in diversity is determined by the law of the state in which the district court sits); <u>NAS Elecs., Inc. v. Transtech Elecs. PTE, Ltd.</u>, 262 F. Supp. 2d 134, 143 (S.D.N.Y. 2003) (extending <u>Semtek</u> to cases in which a federal court is determining the preclusive effect of an earlier federal court diversity judgment); <u>Mario Valente Collezioni, Ltd. v. AAK Ltd.</u>, 280 F. Supp. 2d 244, 252 (S.D.N.Y. 2003) (same).

      1. <u>Res Judicata</u>

New York courts employ a transactional analysis to determine whether claims are res judicata. <u>See</u> <u>Yoon v. Fordham Univ. Faculty and Admin. Ret. Plan</u>, 263 F.3d 196, 200 (2d Cir. 2001) (citing <u>O'Brien v. City of Syracuse</u>, 54 N.Y.2d 353, 357 (1981)). Under the transactional theory of res judicata, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." <u>O'Brien</u>, 54 N.Y.2d at 357 (citation omitted); <u>see</u> <u>also</u> <u>Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, 202 F. Supp. 2d 126, 135-36 (S.D.N.Y. 2002) (applying New York transactional approach).

Satterfield's complaint in <u>Satterfield I</u> described a series of events giving rise to his asserted interest in Monsanto and Solutia stock: namely, the transactions that converted Smith Oil into Monsanto, followed by Monsanto and Solutia's refusal to recognize Satterfield's current property interest in their stock. <u>See</u> Verified Complaint (reproduced as Ex. A to Notice of Removal, filed Nov. 9, 1998 (Docket #2 in 98 Civ. 8040)), ¶¶ 4-30. In <u>Satterfield I</u>, Satterfield named both companies as defendants and alleged conversion, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, fraud, and conspiracy to deprive him of his property. <u>Id.</u> ¶¶ 31-63.

In the instant suit, Satterfield IV, Satterfield repeats the same series of events. Compl. ¶¶ 8-13, 24-28, 41. This time, however, he asserts his allegations with respect to Pfizer, Monsanto's successor in interest, and adds claims of mail fraud, wire fraud, and conspiracy to commit fraud. Id. ¶¶ 54-57, 63-73. Satterfield's addition of new claims does not avoid the preclusive effect of res judicata because the new claims arise out of the same transactions as the claims that have already been litigated. See Yoon, 263 F.3d at 201 ("Under [New York's transactional] analysis, a variation in the facts alleged, legal theories asserted, or relief sought in the new pleading generally will not affect the result, because separately stated causes of action 'may nevertheless be grounded on the same gravamen of the wrong upon which the action is brought.'") (citations omitted). Nor is it of any moment that Pfizer was not a party to the original action as res judicata applies to "parties or their privies," Maharaj, 128 F.3d at 97. The doctrine, therefore, bars suits against Pfizer as a successor in interest to Monsanto following the merger. See In re Teltronics Servs. Inc., 762 F.2d 185, 191-92 (2d Cir. 1985) (finding privity where defendant had merged with company named as a defendant in prior proceedings).

Accordingly, all the claims against Pfizer that appear in Satterfield IV – including the newly added claims of common law fraud, mail fraud, and wire fraud, as well as conspiracy to commit these frauds – are barred by res judicata.

## 2. Collateral Estoppel

Insofar as the complaint in Satterfield IV names FBWH, it must be dismissed under the doctrine of collateral estoppel. In New York, the doctrine of collateral estoppel "prevents a party from relitigating an issue decided against that party in a prior adjudication." Curry v. City of Syracuse, 316 F.3d 324, 331 (2d Cir. 2003) (quoting Fuchsberg & Fuchsberg v. Galizia, 300 F.3d

105, 109 (2d Cir. 2002)); accord Ryan v. N.Y. Tel. Co., 62 N.Y.2d 494, 500 (1984). Collateral

estoppel "may be invoked to preclude a party from raising an issue (1) identical to an issue

already decided (2) in a previous proceeding in which that party had a full and fair opportunity to

litigate." Curry, 316 F.3d at 331 (citation omitted); accord Vishipco Line v. Charles Schwab &

Co., 2003 WL 1345229, at *3 (S.D.N.Y. Mar. 19, 2003); Parker v. Blauvelt Volunteer Fire Co.,

93 N.Y.2d 343, 349 (1999). Further, "the issue must have been material to the first action or

proceeding and essential to the decision rendered therein, and it must be the point actually to be

determined in the second action or proceeding." Ryan, 62 N.Y.2d at 500-01 (internal citations

omitted); accord Wight v. Bankamerica Corp., 219 F.3d 79, 88 (2d Cir. 2000).

    Here, the claims against FBWH are premised upon FBWH's efforts in quashing a

subpoena that would have "forced Defendant Pfizer to release documents that would detail the

fraudulent scheme for which Defendant Pfizer is liable." Compl. ¶ 45. As already discussed,

Satterfield I conclusively determined that Satterfield has no property interest arising from his

ownership of the Lion Oil scrip certificate and thus there was no "fraudulent scheme" for which

Pfizer is "liable." Having had a full and fair opportunity to litigate his position before the courts,

Satterfield is collaterally estopped from raising this issue in subsequent litigation against FBWH.

Because his claims against FBWH are premised on the existence of this scheme, his complaint

against FBWH must be dismissed.

    C.  Motion for Sanctions

    Fed. R. Civ. P. 11 states:

        By presenting to the court . . . a pleading, written motion, or other paper, an
        attorney or unrepresented party is certifying that to the best of the person's
        knowledge, information, and belief, formed after an inquiry reasonable under the

18

circumstances, –

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

The defendants argue that Satterfield has violated Rule 11 by using this litigation to harass the defendants, increase the costs of litigation, and to make claims that are not warranted by existing law and that lack evidentiary support.  <u>See</u> Memorandum of Law [of FBWH] in Support of its Motion for Sanctions Pursuant to Fed. R. Civ. P. 11(c) and to Enjoin Plaintiff from Further Related Litigation, filed Sept. 8, 2004 (Docket #18) ("FBWH Rule 11 Br."), at 2, 9-11; Memorandum of Law [of Pfizer] in Support of its Motion for Sanctions Pursuant to Fed. R. Civ. P. 11(c) and to Enjoin Plaintiff from Further Related Litigation, filed Sept. 7, 2004 (Docket #16) ("Pfizer Rule 11 Br."), at 5-8.  Defendants have also moved to enjoin Satterfield from filing any other litigation arising out of the transactions at issue here.  FBWH Rule 11 Br. at 12-15; Pfizer Rule 11 Br. at 8-10.

As a threshold matter, the technical requirements for making a motion for sanctions have been met.  First, the defendants' motions for sanctions were made separately from other motions, as is required by Rule 11.  Second, defendants complied with the "safe harbor" provision of Rule 11 which requires parties to serve the motion 21 days before filing it in order to give the non-moving party an opportunity to withdraw his or her submission.  Pfizer served its motion on July 12, 2004 and filed it on September 7, 2004.  <u>See</u> Letter from Steven R. Schindler to Charles M.

Satterfield, III, dated July 12, 2004 (reproduced as Ex. A to Notice of Motion for an Award of

Sanctions Against Plaintiff, filed Sept. 7, 2003 (Docket #15)). FBWH served its motion on

Satterfield on August 16, 2004 and the motion was filed on September 8, 2004. Certificate of

Service (reproduced as Ex. J to Motion for Sanctions Pursuant to Rule 11 [made by FBWH],

filed Sept. 8, 2004 (Docket #17)). This is sufficient to comply with the requirements of Rule 11.

Pro se litigants are not exempt from the "obligation to comply with court orders and with

the Federal Rules of Civil Procedure." McDonald v. Head Criminal Court Supervisor Officer,

850 F.2d 121, 124 (2d Cir. 1988). However, when considering whether to impose sanctions, "the

court may consider the 'special circumstances of litigants who are untutored in the law.'"

Simpson v. Putnam County Nat'l Bank of Carmel, 112 F. Supp. 2d 284, 292 (S.D.N.Y. 2000)

(quoting Maduakolam v. Columbia Univ., 866 F.2d 53, 56 (2d Cir. 1989)). The court may also

consider "whether the litigant has been warned of the possible imposition of sanctions." Daniel

v. Safir, 135 F. Supp. 2d 367, 379 (E.D.N.Y. 2001). Even if a plaintiff's claims are "plainly

without merit," that alone may not be sufficient to merit sanctions, in particular if the plaintiff is

pro se. Id. Furthermore, as the Second Circuit has declared, "courts must strive to avoid the

wisdom of hindsight" and "any and all doubts must be resolved in favor of the signer." Eastway

Constr. Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985).

Courts have imposed sanctions where plaintiffs knew or should have known that their

claims were barred by res judicata or collateral estoppel. See DePonceau v. Bush, 2004 WL

1574621, at *3 (W.D.N.Y. June 4, 2004); Vishipco, 2003 WL 1345229, at *11; Lipin, 202 F.

Supp. 2d at 140-41. Satterfield has been on notice that his claim to property in Pfizer has been

fully and finally adjudicated. Several courts have expressly stated this in their opinions. In

Satterfield II, the Chancery Court determined that "[a]ll the requirements of <u>res judicata</u> are easily satisfied here." 2003 WL 1358751, at *1 n.5. The court concluded that "[h]aving already had a full and fair opportunity to litigate his claim for shares in courts of competent jurisdiction, Satterfield must live with their judgment." <u>Id.</u> The court also highlighted that the "mere fact that clearly competent tribunals may have made a mistake of law" cannot help Satterfield overcome the bar and stated that "[Satterfield] has had all the days in court that he is entitled to have to win his dispute with Pharmacia and Solutia." <u>Id.</u> at *2. On review, the Delaware Supreme Court found it "manifest on the face of the opening brief" that the judgment should be affirmed. <u>Satterfield II</u>, 2002 WL 31107584, at *1. In <u>Satterfield III</u>, the court granted the defendants' motion for summary judgment, due in part because the Southern District had already determined that Satterfield had no property interest in Monsanto stock. <u>Satterfield III</u>, 2003 WL 22953179, at *3.

Satterfield also expressly acknowledged that his claims were barred before the district court in the present action. At a Rule 16 conference, Judge Wood reviewed the history of the litigation and the following exchange took place:

> The Court: So do you understand that any issue that was raised in the case before Judge Stanton or any related issue that you could have rased before Judge Stanton has been decided and cannot be relitigated[?]
>
> Mr. Satterfield: Hence the reason for my Rule 60(b) motion to have that vacated and set aside.

Transcript, filed July 28, 2004 (Docket #6), at 6-7.

The issue thus becomes whether Satterfield had a proper basis on which to bring the Rule 60(b) motion. During the conference, Judge Wood warned Satterfield as follows:

> You are unlikely to be able to bootstrap your fraud claim to Section (4) or (6).

21

> There is a reason that the rule separates them. . . .  If you cannot [show that you can fit yourself within either section], you have to think long and hard about this because you may find sanctions being entered against you, which I'm sure you don't want.

Id. at 9.  Judge Wood then added, "I just want to caution you to look very carefully, particularly at the point . . . that it appears that Rule 60(b)(3) gives you only one year from the date of judgment if what you are claiming is fraud, and you told me today that that is what you are claiming."  Id. at 10.

Given these warnings, the filing of two separate lawsuits that were found meritless and barred by res judicata (Satterfield II and Satterfield III), and the lack of merit to Satterfield's Rule 60(b) motion, there is a very strong argument that Rule 11 sanctions are appropriate on the ground that Satterfield's claims were not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."  Fed. R. Civ. P. 11(b)(2).  Nonetheless, Satterfield at least made some attempt to argue that the original judgment should be vacated under Rule 60(b), even if that attempt lacks any merit.  While it is a close question, this Court would exercise its discretion not to impose a financial sanction given Satterfield's pro se status.  This is particularly so given that Rule 11 sanctions must be "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(c)(2).  Thus, "the least severe sanction adequate to serve the purpose of the penalty should be imposed."  Vollmer v. Publishers Clearing House, 248 F.3d 698, 710-11 (7th Cir. 2001); accord DePonceau, 2004 WL 1574621, at *3 (sanctions must be "carefully tailored"); Williams v. Revlon Co., 156 F.R.D. 39, 44 (S.D.N.Y. 1994) ("Rule 11 sanctions must be tailored . . . to the particular facts of the particular case") (citing cases).

While this Court is of the view that a financial sanction should not be imposed, there is no doubt that relief is required to ensure that Satterfield does not again file a suit relating to his scrip or his entitlement to shares in Pfizer or any successor company. The relief sought by defendants is an injunction against future lawsuits, a remedy that is available to this Court in appropriate circumstances. See, e.g., Malley v. N.Y. City Bd. of Educ., 112 F.3d 69, 69 (2d Cir. 1997) (per curiam) (district court may impose injunction against filing suit in any federal court where the plaintiff had filed repeated lawsuits concerning the same facts); Safir v. U.S. Lines, Inc., 792 F.2d 19, 25 (2d Cir. 1986) (injunction issued against filing suit in any federal court related to facts of that case), cert. denied, 479 U.S. 1099 (1987) ; Lacy v. Principi, 317 F. Supp. 2d 444, 449-50 (S.D.N.Y. 2004) (enjoining plaintiff who repeatedly filed suits barred by res judicata from filing suit in any court related to same nucleus of facts); Raffe v. John Doe, 619 F. Supp. 891, 898 (S.D.N.Y. 1985) (enjoining litigant from filing future lawsuits in federal court). The authority to enjoin litigants arises from the All Writs Act, 28 U.S.C. § 1651(a), see Safir, 792 F.2d at 23-24 (citing cases), as well as the inherent authority of the court, see Lacy, 317 F. Supp. 2d at 449 ("When a plaintiff files repeated lawsuits involving the same nucleus of operative facts, a district court has the inherent power to enjoin him from filing vexatious lawsuits in the future."). Not only does the court have the right to enjoin a vexatious litigant, but the Second Circuit has found that "[f]ederal courts have . . . the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." In re Martin-Trigona, 737 F.2d 1254, 1261 (2d Cir. 1984); accord Lacy, 317 F. Supp. 2d at 449 (the court has "a constitutional duty to enjoin the filing of frivolous lawsuits in order to preserve judicial resources when the plaintiff is likely to file more suits in the future and non-

injunctive relief would be ineffective").

The Second Circuit has set out the following list of factors that a court must consider in determining whether an injunction against further litigation is merited:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

Safir, 792 F.2d at 24. "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." Id.

Here, each of these factors favors the defendants. Satterfield has filed three duplicative lawsuits, including the instant case. In addition, he has moved from federal courts in New York, to chancery court in Delaware, to the federal courts in Delaware, then back to New York. He has no good faith expectation of prevailing in future lawsuits based on his claim to stock. He is not represented by counsel and thus must bear full responsibility for bringing the suits in question. He has caused needless expense to the defendants in these suits and an unnecessary burden to the courts that have been forced to adjudicate them. Finally, in the absence of an injunction, there is good reason to believe that Satterfield would continue to file lawsuits. See Lacy, 317 F. Supp. 2d at 449 ("The tenor of plaintiff's submissions to this Court also indicates that he has no intention of abandoning his crusade . . . ; it appears that he feels that he has been grievously wronged and will not stop filing lawsuits until he either finds a judge who agrees with him or is otherwise restrained from doing so." ).

Accordingly, an injunction should issue barring Satterfield from instituting any new action that relates in any way to the scrip at issue in his suits or to obtaining an interest in the shares in Pfizer or any related entity. The injunction should make clear that any violation will be treated as a contempt of Court. In addition, because courts have recognized that "[v]exatious litigants may be sanctioned in a way which limits the litigant's ability to initiate new actions unless the litigant first complies with certain conditions," DePonceau, 2004 WL 1574621, at *3 (citation omitted), there should be additional restrictions on any future litigation filed by Satterfield in any court on any subject. Specifically, Satterfield should be required to annex to his complaint or other initial pleading a copy of the document setting forth the final injunctive relief issued in this case. In addition, he should be required to include an attestation under penalty of perjury that the cause of action stated in his suit does not violate the injunction and does not relate either directly or indirectly to the stock or scrip originally owned by Oldroyd or to obtaining an interest in the shares of Pfizer or any successor or related entity. Any initial filing that does not include such an attestation should be summarily dismissed pursuant to the terms of the injunction and should, of course, subject Satterfield to sanctions and/or contempt of Court.

Conclusion

For the foregoing reasons, the plaintiff's motion under Rule 60(b) (Docket #23) should be denied and defendants' motions to dismiss (Docket ##7, 9) should be granted. In addition, defendants' motions for sanctions (Docket ##15, 17) should be granted as set forth above.

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure,

the parties have ten (10) days from service of this Report and Recommendation to serve and file

any objections. See also Fed. R. Civ. P. 6(a), (e). Such objections (and any responses to

objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Kimba M.

Wood, 500 Pearl Street, New York, New York 10007, and to the undersigned at 40 Centre Street,

New York, New York 10007. Any request for an extension of time to file objections must be

directed to Judge Wood. If a party fails to file timely objections, that party will not be permitted

to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474

U.S. 140 (1985).

Dated: March 17, 2005
      New York, New York

                                 GABRIEL W. GORENSTEIN
                                 United States Magistrate Judge

Copies sent to:

Charles M. Satterfield, III
315 Hadley Street # 4326
Houston, TX 77002

Steven R. Schindler
Schindler, Cohen & Hochman, LLP
100 Wall Street, 15th Floor
New York, NY 100025

Donald N. David
Fischbein Badillo Wagner Harding
909 Third Avenue
New York, NY 10022

Hon. Kimba M. Wood
United States District Judge